**SO ORDERED.**

**SIGNED this 12 day of July, 2012.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

| | |
|---|---|
| **CARROLL E. VOLIVA,** | **CHAPTER 13** |
| **CHERYL J. VOLIVA,** | **CASE NO. 10-10031-8-RDD** |
| **DEBTORS** | |

**ORDER SUSTAINING DEBTORS' AMENDED OBJECTION**
**TO PROOF OF CLAIM OF HOMER SMITH SEAFOOD, INC.**

Pending before the Court is the amended[1] Objection to Proof of Claim #6-2, of Homer Smith Seafood, Inc., filed by Carroll E. Voliva and Cheryl J. Voliva (the "Debtors") on April 20, 2012 and the Objection to Motion Objecting to Proof of Claim #6-2, of Homer Smith Seafood, Inc., filed by L.D. Amory & Co. Inc., O'Neal's Sea Harvest, Inc., Homer Smith Seafood, Inc., and Garland Fulcher Seafood (the "Creditors") on May 21, 2012. The Court conducted a hearing on June 5, 2012 in Wilson, North Carolina to consider these matters.

---

[1] The Debtors filed a Motion Objecting to Proof of Claim of Homer Smith Seafood, Inc. on April 18, 2012. The Debtors filed an amended Motion Objecting to Proof of Claim of Homer Smith Seafood, Inc. on April 20, 2012 (hereinafter referred to as the "Amended Objection"). Both the original and amended motion are entitled "Motion Objecting Proof of Claim #6-2, Filed by Homer Smith Seafood, Inc."

On December 7, 2010, the Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. On Schedule D, the Debtors listed a secured claim for Homer Smith Seafood, Inc. ("Homer Seafood") in the amount of $5,087.50. On August 30, 2010, judgments were entered in favor of the Creditors and filed in the General Court of Justice, Pamlico County, District Court Division as follows: (1) Garland Fulcher Seafood, Inc. in the amount of $13,042.58 plus costs and interest; (2) Homer Seafood in the amount of $5,087.50 plus costs and interest; (3) O'Neal's Sea Harvest, Inc. in the amount of $31,305.45 plus costs and interest; and (4) L.D. Armory and Company, Inc. in the amount of $3,920.80 plus costs and interest.

On October 5, 2011, Homer Seafood filed amended proof of claim 6-2 in the amount of $5,375.89, based on a money judgment secured by real estate. Homer Seafood listed the entire amount as being entitled to priority under 11 U.S.C. § 507(a)(6)(B).

The Debtors' Plan has not yet been confirmed. On April 20, 2012, the Debtors filed the Amended Objection to Homer Seafood's Proof of Claim 6-2, objecting to the claim being entitled to priority. The Debtors contend no evidence was attached to the proof of claim demonstrating Homer Seafood's priority status. The Debtors request that the Court disallow the claim.

Homer Seafood responds that its claim in the amount of $5,375.89 is entitled to priority and the elements of 11 U.S.C. § 507(a)(6)(B) have been satisfied. Further, Homer Seafood contends that it did attach documentation to the proof of claim to support its judgment lien and it appropriately indicated its claim as a priority claim on the proof of claim.

At the hearing on June 5, 2012, Alice Willis, an owner of Homer Seafood, testified as to the nature of Homer Seafood's business. She testified that in 2008, Homer Seafood owned three fishing trawlers. Ms. Willis represented that Homer Seafood was advised by an attorney to set up each trawler as its own corporation for liability purposes. She testified that this was a common practice in the fishing

2

industry. Ms. Willis testified that each trawler had its own captain and Homer Seafood had control over the trawlers, the captains, and to whom fish was sold. She testified that Homer Seafood had the authority to fire and hire captains and that Homer Seafood held itself out to the public as fishermen.

Homer Seafood introduced into evidence permits issued by the North Carolina Division of Marine Fisheries and permits issued by the United States Department of Commerce allowing the trawlers to fish in federal waters. Based on the permits, the trawlers were permitted to fish for the following, among others: flounder, Atlantic dolphin/wahoo, south Atlantic rock shrimp, shark incidental, south Atlantic penaeid shrimp, swordfish incidental, snapper-grouper, wreckfish, and Atlantic tuna. Homer Seafood was permitted to purchase fish from the trawlers and sell the fish to the public. Ms. Willis testified that the trawlers were also permitted to fish in Virginia and New Jersey and when the trawlers fished in these states, Homer Seafood authorized the trawlers to sell fish to entities other than Homer Seafood.

Ms. Willis testified that the Debtors, through their company Carroll's Seafood, purchased flounder from Homer Seafood on an open account from approximately February 1, 2008 through February 26, 2008. Homer Seafood billed Carroll's Seafood for the flounder in the amount of $5,087.50. Carroll's Seafood failed to make payment after repeated demands of Homer Seafood. Homer Seafood filed an action against the Debtors and Carroll's Seafood in the District Court Division of Pamlico County, North Carolina. Judgment was entered in favor of Homer Seafood in the sum of $5,087.50 plus costs and interest.

Carroll Voliva, the male debtor and owner of Carroll's Seafood, testified as to the nature of his seafood business. He testified he is a wholesaler who buys and sells fish and owns trucks to deliver the fish along the east coast of the United States. His practice was to purchase whole fish from sellers and pick the fish up from the sellers at the boat dock. When he picked the fish up, the fish were already

packed in crates and on ice. He then loaded the crates onto his truck and transported the fish back to Carroll's Seafood's warehouses. The warehouses were located adjacent to the Debtors' residential property. One warehouse was approximately 65' x 65'. The other warehouse was approximately 40' x 28'. From there, the fish were loaded onto different route delivery trucks depending on where the fish were being transported. He testified that the fish were never taken out of the crates for inspection.

Mr. Voliva represented that prior to the time he purchased the flounder at issue, Carroll's Seafood sold fish to buyers in Japan. He testified that buyers in Japan only accepted sushi quality fish. To ensure the fish he sent to Japan were sushi quality, he laid all of the fish out on tables in his warehouses and separated the fish based on their quality. He then packed the sushi quality fish on ice in styrofoam, labeled the fish and then transported the fish to the airport where they were flown to the buyers in Japan. Mr. Voliva testified that during the time period in which the fish were sold to the Debtors, Carroll's Seafood was not selling fish to Japan and he did not use the warehouses.

Mr. Voliva represented that Carroll's Seafood was a wholesaler and that the business did not have a license to process fish.

Debtors argue that Homer Seafood has not satisfied the elements of 11 U.S.C. § 507(a)(6)(B). Specifically, the Debtors contend that Homer Seafood was not a United States fisherman as required by the statute, because Homer Seafood and the fishing boats are separate legal entities. While the fishing boats may be United States fisherman, the Debtors contend Homer Seafood is not a United States fisherman. Further, the Debtors contend that the Debtors were not engaged in operating a fish produce storage or processing facility pursuant to 11 U.S.C. § 507(a)(6)(B) because the Debtors' did not engage in any acts that would constitute "storage" or "processing."

Homer Seafood responds that although it set up each fishing trawler as its own separate corporation, it had complete control over the fishing trawlers and the captains. Homer Seafood argues that the word "processing" should be interpreted broadly to include the Debtors' practices.

For the reasons set forth below, the Amended Objection to Proof of Claim #6-2, of Homer Seafood is **SUSTAINED**.

## DISCUSSION

11 U.S.C. § 507 designates certain claims that are entitled to priority in bankruptcy cases. Specifically, 11 U.S.C. § 507(a)(6)(B) provides:

> (a) [t]he following expenses and claims have priority in the following order: . . . .
> (6) Sixth, allowed unsecured claims of persons - . . .
> (B) engaged as a United States fisherman against a debtor who has acquired fish or fish produce from a fisherman through a sale or conversion, and who is engaged in operating a fish produce storage or processing facility -
> but only to the extent of $5,775 for each such individual.

11 U.S.C. § 507(a)(6)(B).

The plain language of section 507(a)(6)(B) requires the claimant to be a United States fisherman and the debtor to have: (1) acquired fish or fish produce from a fisherman through sale or conversion; and (2) engaged in operating a fish produce storage or processing facility. 11 U.S.C. § 507(a)(6)(B). A properly filed claim is prima facie evidence of the validity and the amount of the claim. F.R.B.P 3001(f). Accordingly, Homer Seafood must establish its compliance with 11 U.S.C. § 507(a)(6)(B) by a preponderance of the evidence.

The Bankruptcy Code does not define "United States fisherman." The Bankruptcy Code does however define "commercial fishing operation" as "the catching or harvesting of fish, shrimp, lobsters, urchins, seaweed, shellfish, or other aquatic species or products of such species." 11 U.S.C. § 101 (7A)(A).

The Court finds Homer Seafood was engaged as a United States fisherman at the time it sold the flounder to the Debtors. Although, Homer Seafood set the trawlers up as separate corporations, Homer Seafood had 100% ownership of the separate corporations, the trawlers and the captains on the trawlers.

Now the Court must determine whether the Debtors (1) acquired fish or fish produce from a fisherman through sale or conversion; and (2) engaged in operating a fish produce storage or processing facility. 11 U.S.C. § 507(a)(6)(B). The Debtors satisfy the first element. It is clear the Debtors acquired fish from a fisherman through sale. The more difficult question is whether the Debtors engaged in operating a fish produce storage or processing facility.

The Court finds that the Debtors were not engaged in operating a fish produce storage or processing facility at the time the flounder were sold to the Debtors. No evidence was presented that the Debtors were engaged in operating a fish produce storage facility. Ms. Willis testified that when the Debtors bought the fish from Homer Seafood, the fish were already packed on ice in styrofoam crates. The Debtors would then transport the fish back to their warehouse where they would load the boxes on a different truck to deliver to customers. Mr. Voliva testified that because they were wholesalers and wanted to keep the fish as fresh as possible, transport was accomplished very quickly.

As to whether the Debtors were engaged in operating a fish processing facility, the evidence shows that during the time period when the Debtors purchased fish from Homer Seafood, the Debtors purchased the fish and picked the fish up in crates provided by Homer Seafood. The Debtors then transported the fish back to the warehouses to load the fish onto different delivery trucks depending on the customer's locations. Mr. Voliva testified that he would sometimes add ice to the crate prior to shipping.

The Bankruptcy Code does not provide a definition of "processing." Process is defined in Webster's Online Dictionary as "to subject to or handle through an established usually routine set of procedures." Merriam-Webster Online Dictionary http://www.m-w.com (last visited July 11, 2012).

Black's Law Dictionary defines "process" as "a series of actions, motions or occurrences; progressive act or transaction; continuous operation; method; mode or operations, whereby a result or effect is produced; normal or actual course or procedure; regular proceeding, . . . . Process is mode, method or operation whereby a result is produced; and means to prepare for market or to convert into marketable form." *Wetterau, Inc. v. Dir. of Revenue*, 843 S.W.2d 363, 369 (1992) (citing *Blacks's Law Dictionary*, 1205 (6th ed.1990)).

The Food and Drug Administration in 21 CFR § 123.3(k)(1), defines processing with respect to fish or fishery products as:

> (k)(1)  handling, storing, preparing, heading, eviscerating, shucking, freezing, changing into different market forms, manufacturing, preserving, packing, labeling, dockside unloading, or holding.
> (2) The regulations in this part do not apply to:
> (i) Harvesting or transporting fish or fishery products, without otherwise engaging in processing.
> (ii) Practices such as heading, eviscerating, or freezing intended solely to prepare fish for holding on board a harvest vessel.
> (iii) The operation of a retail establishment.

21 CFR § 123.3 (k)(1).

The Court finds that during the period when Carroll's Seafood was selling fish to buyers in Japan, it was engaged in operating a fish processing facility. During that time period, Carroll's Seafood employed a process of actions, including laying out and separating all fish based on quality, packing and icing the sushi quality fish, labeling the fish and then sending the fish to the airport to be flown to buyers in Japan. These actions produced the end result of providing sushi quality fish to the buyers in

Japan. However, during the time of purchases from Homer Seafood, the Debtors were not engaged in selling fish to buyers in Japan.

Statutory priorities under section 507 of the Bankruptcy Code are to be strictly and narrowly construed. *Travelers Prop. Cas. Corp. v. Birmingham-Nashville Express, Inc.* (*In re Birmingham-Nashville Express, Inc.*), 224 F.3d 511, 515 (6th Cir. 2000).

The Food and Drug Administration's definition is the most specific and most applicable in this case. Transporting and reloading crates of flounder does not fall within the definition of "processing" to qualify Carroll's Seafood as a "processing" facility as required by 11 U.S.C. § 507(a)(6)(B). Further, the Court finds that reloading and transporting crates of flounder does not meet the requirements of a fish produce storage facility. Therefore, the Amended Objection to Proof of Claim #6-2, of Homer Seafood, Inc. is **SUSTAINED**. The Claim of $5,087.50 will be treated as unsecured, or secured to the extent of any value of collateral which may secure the claim.[2]

**SO ORDERED**.

**END OF DOCUMENT**

---

[2] In their Schedule A, the Debtors listed three parcels of real property. On April 17, 2012, the Court entered an order valuing the three parcels of real property as follows: (1) 538 Jones Road, Vandemere, North Carolina 28587 with a value of $40,000.00; (2) Parcel 102-4-B consisting of eighty-four (84) acres with a value of $50,000.00; and (3) 540 Jones Road, Vandemere, North Carolina 28587 with a value of $100,000.00.